Your Honor, this is Nancy Olson in the District of Nevada. I don't see myself on the video screen. I just want to ensure that everyone can see me before I begin. Yes, we can see you. Okay, excellent. Thank you so much. I'm appearing on behalf of the United States this morning. May it please the Court. The question presented in this case is whether, considering all of the facts known to the officers at the time of the traffic stop of this big rig truck, objectively, did they have probable cause to search the truck? And now, when the District Court granted suppression, it made four distinct errors, leading it to conclude that there was no probable cause and leading it to grant the suppression motion. It focused only on the subjective beliefs of the officers. It applied a truncated timeframe rather than considering all of the facts leading up to the time of the search. It ruled that the self-serving statements he made about marijuana smoking. And finally, it ignored this Court's longstanding precedent that has previously held that the odor of marijuana gives rise to probable cause to search a vehicle. So, can I ask about, those are all good, that summarizes the issues in the case. On the pointed out that at least under state law, in the unpublished opinion, it said these prior cases stating that smell alone, odor alone, would provide probable cause are no longer applicable. Does the government agree with that under Nevada state law? At the time of the search, there was no such binding ninth circuit precedent, so that's what we control here. Hold on a second, there's still no binding ninth circuit precedent. I'm asking you more, do you agree that given the legalization in Nevada, we need to revisit at some point our prior precedent to odor alone provides probable cause? Only if you decline to reach the question about the Fourth Amendment analysis under federal law, because remember, since we're in the suppression issue over in federal court, we know from more, we know from the cases we cited in our brief, that once you come into federal court and you're analyzing Fourth Amendment reasonableness, state law is irrelevant. It doesn't matter whether or not something was illegal under state law when you're trying to analyze under Fourth Amendment. So the district court avoided federal law, as best I could tell, by basically saying the officers did not believe at the time of the stop that they were operating under federal law. Can you address that? Did they have to have that belief that they were operating under federal law? No, they did not. Under the Supreme Court case Wren, subjectivity, whatever the officers believed at the time, whatever they were thinking or maybe saying, it was captured on the body cams. That's all irrelevant. Probable cause is a purely objective analysis. And so when this court, the Ninth Circuit, a federal court, is reviewing a federal district court's decision on suppression, you're applying the Fourth Amendment, you're looking at reasonableness, and you're deciding whether or not the Fourth Amendment was violated. So it doesn't matter if the officer said at the time of the search, I think I have probable cause. I think that these motor vehicle carrier regulations apply. I'm going to do X, Y, Z. Oh, by the way, I think this also violates federal law. There's no case out there that says we should look at the statements by the officers on the scene and then limit the analysis to what they think is going on. And Wren, the Supreme Court made very clear that the test is the opposite of that. This is an objective look. The other thing that the district court relied on was that there wasn't probable cause to prolong the stop. So he's picked up for speeding. He stopped for speeding. The officer apparently believes that he doesn't have probable cause just based on the smell, or at least he's confused about whether he does. So he goes back and calls another officer and detains them there or keeps the stop going for 30 minutes. What is the law on that? Do you have to have probable cause to keep them there while another officer comes to the scene? Or could you just do that in a normal stop? You have to have further reasonable suspicion for any prolongation of the stop. So at the beginning, it was initiated by a speeding stop, and then he started to do the ticket. Now there is evidence in the record that some of that delayed 30 minutes was because he was working on completing the speeding paperwork, and then part of the other delay was to allow enough time for the other officer to come and assist him because he wanted some guidance on those administrative regulations. So he did have, even if you set aside whether odor is enough under state law now, putting that completely off to the side for a moment, the happened, that was at least enough for additional reasonable suspicion to investigate further. But I thought the evasiveness didn't come until 30 minutes in. Malik gave an initial answer as to when he'd last smoked marijuana. Then when they went back 30 minutes later, he changed his answer. So I'm not sure, I mean, help me understand how evasiveness could serve as the basis for extending the stop. Sure. I think the answer is there was some evasiveness at the beginning, and then there was additional evasiveness 30 minutes in. So I'll just summarize that. At the beginning, when the officer first confronted him about the smell, and he said, oh, I smoked this morning, remember that this stop took place at 9 p.m. So if he's saying morning, we're talking at least, at best, nine hours. So the officer's thinking, this is what I smell. He's saying, roughly nine hours ago, that doesn't jive. And then separately, a few moments later, he called it six to seven hours. So even then, what the officer is saying is these time frames don't really add up, and the smell doesn't really add up, just from being able to stand there at the door of the truck and have a particular smell that he thinks is more recent than something saying this morning or six to seven hours ago. And then 30 minutes later, when the other officer arrived, that's when the additional time frame of three to four hours was raised. So there were a few different points in time that were raised. And then Officer Garcia called the second officer, and Officer Zare, when he called Officer Zare, it took him 30 minutes to show up. But did Officer Zare, at the time of the initial phone call, tell Officer Garcia, hey, is this a commercial vehicle? Did they have the discussion about this potentially being different laws that apply to the commercial vehicle context? Or did that discussion not happen until 30 minutes later? No, they did. They talked about the fact that it was a big rig truck at the initial phone call. And they talked about, Zare used the terminology probable cause. He also used the terminology automatic out of service, kind of referring to two different things. Probable cause is one thing under the Fourth Amendment, under the automobile exception. And then of course, the administrative regulations that apply to just truck drivers, that's a separate analysis. So all of that was mentioned on that initial encounter. Are those, is that all federal regulations that are applicable there, or is there Nevada regulations that enter into that? Nevada has incorporated the federal regulations into its administrative code. And Your Honors, I see I have about two minutes left. If it's all right with you, I'd like to reserve for rebuttal. Thank you, Counsel. Ms. Berry? If I may please the court, my name is Kate Berry and I represent Chief Malik. I will be presenting an argument this morning, both on behalf of Mr. Malik, as well as Abdul Majid. He and Majid are both out of custody and have returned to their homes in Canada. The District Court properly held that Nevada State Troopers did not have probable cause to search the truck in this case. After a full evidentiary hearing, review of body camera footage that captured every moment of the stop and search, and reviewing the accompanying transcript, the District Court made clear factual findings that this court would have to find are clearly erroneous in order to overturn that decision. Malik and Majid have provided this court with the body camera footage, the transcripts of that footage, as well as the evidentiary hearing transcripts in order to supplement the On appeal, the government does not and cannot argue that the District Court's factual findings were clearly erroneous. Instead, it asserts a series of hypothetical scenarios that could have supported a search, but find no support in the record. Let me interrupt now. This is Judge Block speaking. Can you just clarify factually, Ms. Roy, my understanding that the truck driver did acknowledge that he was smoking six hours earlier, and then at a later point, he said it was three hours earlier. How does that factor into analysis? You're correct, Your Honor, that Malik stated at the inception of the stop that he had bought a pre-rolled marijuana joint in California, which was legal. He had smoked it that evening and he had completed the joint in the morning and then thrown it away. He estimated the time at that point as approximately six to seven hours previously. He repeated that same accounting of events approximately four or five times throughout the duration of the stop. After the officers had made the decision to search the truck and had pulled both Malik and Majid out of the truck to frisk them and to commence the search, Trooper Zaire asked a number of follow-up questions, and Malik again, in a very relaxed way, stated the same exact story. The only small difference was the estimate of the timeline. At that point, Malik estimated the time being three to four hours, but in that context, Malik also again stated it was that morning that he had thrown the end of the joint marijuana Let me follow up on this question, Ms. Boyd. Isn't it unlawful under state law, if not federal law, to be operating a motor vehicle under the influence, whether it be drugs or alcohol? Isn't that a crime under Nevada law? It is illegal to be under the influence of a controlled substance at the time you're driving. The district court made specific factual findings in this case, but there was no evidence Malik was under the influence. The trooper specifically stated that he didn't see signs of intoxication, and the troopers did not ask follow-up questions about precisely when in the morning he smoked. They didn't look at the log books which exist in CMVs to see when he started driving, and critically, they never conducted a field sobriety test. Well, as I understand Fourth Amendment jurisprudence, and correct me if I'm wrong, as long as the arrest for any crime, that would satisfy the Fourth Amendment standard. How does that impact this case? In this case, on this record, the only question before this court is whether there was probable cause to believe that a state crime had been committed. The federal issue is- Why is that? Counsel, can you clarify why that is? Because the district court did provide an analysis under federal law, but does it really depend, I mean, does it depend on whether the officers had subjective intent to, you know, thought they could only arrest under state law? Wouldn't they have had authority to arrest under federal law? The question is not subjective intent, Your Honor. First, as a factual matter, the district court made a factual finding that there was no reason to believe there was any marijuana in the truck. And so, the federal issue in this case, specifically on this record- Well, but hold on a second. It would have been a violation of federal law even to have smoked marijuana, even in the last- I mean, even his own admission was a violation of federal law. The only federal issue that the government points to is possession of marijuana. That's the only issue that they've preserved on appeal. But returning to your question about the subjective intent, in the Ninth Circuit has held that the question is whether or not officers are trained in and deputized to enforce federal law. In this case, neither trooper had been trained in federal criminal law, nor had they been deputized to enforce it. They weren't even familiar with it. And the government specifically asked for an evidentiary hearing  What good could it make as long as it was a violation of federal law? What good does it make? If it was a violation, that would satisfy probable cause, would it not? It would not. Under the United States currency case and its progeny, there is no basis for asserting there's a federal law basis unless the troopers have been trained in and deputized to enforce it. The district court also stated- Could I add- It would be antithetical. Of course, Your Honor. Could I squeeze in a question, please? Of course. Where did this stop take place in Nevada? I understand it was in eastern Nevada? Is a record show? Yes, it was near White Pines, Your Honor. Yes. And he said he came from California. Does the record show where in California he came from? It does not, Your Honor. And there is no record about the distance between where the stop took place and the California border. A Google map search indicates it's only a few hours, but that's not part of the record in this case. Well, maybe it's a few hours, but it depends on how you're driving and where in California you come from. Everybody's made that report, but it seems to me that because of that, an that the person had been driving, at least he could assume or think that the person was driving while he was smoking marijuana, which is a violation of law, at least in Nevada. So why wouldn't that be enough for the officers to continue asking questions and then developing the case? It seems to me that we've cut the thinking off a little early, at least the district court did. Two responses to that, Your Honor. First, while there was a Rodriguez issue that was argued below, the district court specifically found there was reasonable suspicion to prolong the stop. And it was reasonable for these troopers to question both Malik and Majid to see if the stop turned into probable cause. The problem for the government is that it did not. In terms of your question, Your Honor, about the drive from California to Nevada, the district court made specific factual findings that the odor in this case was faint, that it was the smell of burnt marijuana, which is consistent with what Malik stated, which is that he had smoked that morning and that at the time of the stop, that's why there was that faint smell. What's the basis of that factual finding? So the trooper, Jordan Cavett, stated that he thought it was possible the smell was too strong to fit that factual scenario. And the district court, on cross-examination, a number of supplemental questions was asked. And the district court specifically said that Garcia's subjective timeframe belief is unsupported by any articulated reasonable objective basis. He had not been trained in the strength of marijuana smell, and he couldn't articulate a reasonable basis on that. You mean to say the case is going to depend upon whether he's been trained in smelling marijuana? Under the totality of the circumstances, the court found that there was no reason to believe under that totality that he had been smoking marijuana in the truck while driving or was under the influence at that point. So we would look at this under the clearly erroneous theory. That is, if we felt that the district judge had no basis to make the factual finding, then it's clearly erroneous. And that would be our observation. Is that right? The district court in this case made clear factual findings and also credibility findings about the trooper's testimony in comparison to the body camera footage, assessing the demeanor of both Malik and Najeeb, who were compliant, not nervous, consistent. Did the district judge find the officers were not credible, that they lied? The district court never said specifically that the troopers lied. The district court simply stated that the subjective timeframe that the trooper testified to was that he articulated no basis for that. I see that I'm at the end of my time, Your Honor. I would just like to quickly say that I would ask this court to affirm that there was no probable cause to search in this case. But even if there was probable cause to conduct the search in this case, the district court also found that the search in this case went beyond the scope of the probable cause and the government never appealed that portion of the district court's order. And so this court can affirm on that basis alone. Thank you, counsel. Ms. Olson, do you have rebuttal? Thank you, Your Honor. I'll make three brief points in rebuttal. Yes, Your Honor. Very quickly, are we bound by the findings of the district court and are not committed to countermeasure unless we find that there was clear error? No, Your Honor, because the district court did not make credibility findings in the new evidence here. So normally this court will give great deference to a district court's credibility findings in the situation where a witness comes and takes the stand. The district court is there in the room with them, able to assess demeanor, able to assess body language, and that credibility we're talking about. What happened here is there was a cold record in the sense of body camera footage, and instead we have the troopers who were there with the driver and the passenger at the time, and they were the ones who were able to assess things like demeanor and body language. And so that same deference doesn't apply here because this court has the body camera in front of it. So there's no special deference to say the district court can watch the body camera in some particular way that this court can't. So I don't think that same credibility deference applies here. As to the argument that even though we had reasonable suspicion to prolong the stop, that it never turned into probable cause, I just want to briefly summarize what facts were before the officers and emphasize that it's just a fair probability that they believed that they he pulled it over. He immediately smelled marijuana wafting out of the truck. Malik immediately admitted to possessing and smoking marijuana. He didn't even try to deny that he wasn't using drugs. And again, he made those inconsistent time frames that we already talked about. So it was reasonable for the officers to disbelieve him, not only because of how he was acting in that moment, but also Garcia testified about how it's very common for somebody who's using drugs or alcohol while driving to kind of minimize what's going on, how long ago it was, how much it was. So that all factored into situation here. So under the bar of probable cause, which the Supreme Court has repeatedly stated as a low bar, this is more than enough. And then finally, just the last point that the district court found the search was beyond the scope. We talked all about in our brief why this search was reasonable. It's either reasonable under the Fourth Amendment or it's not. We were talking about the entire scope of the search. So it's not some sort of limited or waived argument on appeal. Thank you, your honors. Thank you, counsel. The case is submitted and we'll move on to the second case on the calendar. Gregory v. Baldwin v. J. Fannin.
judges: Wallace, R.nelson, Block